The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. You may be seated. In our next case today is Harrold v. Hagen. Mr. Allen. Good to have you with us, Mr. Allen. Thank you, Your Honor. May it please the Court, Robert Allen for the Plaintiff Appellant Richard Harrold. The issue presented for appeal is whether Officer Hagen is entitled to qualified immunity for the claims under 42 U.S.C. 1983, counts 1 and 2 of the complaint. This Court reviews qualified immunity determinations de novo. And as the party asserting qualified immunity after the appellant in this case has established that a constitutional violation occurred, the burden then shifts to the officer in this case to show that the right at issue was not clearly established. And in this case, that's one of the errors that the district court made below. In its opinion, the district court said, quote, Mr. Harrold fails, however, to establish that the right violated was clearly established at the time of the violation. As a result, Officer Hagen is entitled to qualified immunity. But in fact, the law is clear that Officer Hagen indeed had the burden of proof with regard to qualified immunity and with regard to his argument that the right at issue in this case was not clearly established. So the district court got the burdens backwards in this case, and I think the case should be remanded on it and reversed on that basis alone. The court erred below in focusing only on police canine cases, of which there are not very many in Virginia, and further erred by focusing on cases involving the release of a canine. Furthermore, the district court focused even more narrowly on the issue of whether a warning was given before the police dog was released. It is clearly established that a police officer must give a verbal warning before releasing a police dog, and the warning may sound like, you know, come out with your hands up or I'm going to release the dog and the dog will bite you. In this case, as alleged in the complaint, Mr. Harold states that he was not aware that any warnings like that were given, and based on the body. Why does that matter, right? Why does his allegation that he was unaware matter, given that we have a body video that shows us that warnings were given? And maybe he didn't perceive them, but we look at these things from the perception of the officer, right? And, you know, he's in the same room a little bit, a minute before the dog bites, and he says, police canine, right? I mean, like that part, that fact, we can't do anything with, right? Well, there is on the video, it's clear that once Mr. Harold is located in this room of boxes, he's on the floor in a fetal position. There's not an additional warning given at that point. I understand that. And you may have an argument that you have to give a warning not just a minute before but ten seconds before or two seconds before. I understand that argument. I'm just trying to you made the point that your client alleged that he was not aware of the warning. But we look at it from the perception of the officer, right? And he says, you know, over the course of the search, five or six times, but, you know, a minute or so before the bite, he does announce, right? And so we can't say that there was no warning given. You may have a different argument that there needed to be another warning given, that six weren't enough. We needed a seven. I totally understand that argument. But you can't say there was no warning, right? I can't say there was no warning given. And I can say that the complaint, which is viewed in the light most favorable to the plaintiff at this point, alleges that Mr. Harrell did not hear the warning. Where does the complaint say there were warnings given that he didn't hear? I thought the only thing the complaint said about a warning was there wasn't a warning given immediately before the attack. Does the complaint discuss whether there were warnings given at some other time? I don't think the complaint alleges that there was a warning given. All the complaint says about a warning is that after he found me and before he set the dog on me, he didn't give me a warning. Right, and that is correct. So what I am wondering is how come we're looking at the other six warnings at all because they don't contradict the complaint. Well, I understand where you're coming from. The complaint makes a passing reference, I would say, to the body-worn camera video. So at that point, the defendant in this case was able to introduce his body-worn camera footage or parts of it or whatever. Part of the video was made a part of the record. And so then at that point, there are some warnings that are audible on that recording. And so that became the issue. I know there are, but the only thing, and I guess I assume you are familiar with the complaint and probably more so than I am. The only allusion to warnings I can find in the complaint is at JA-10 where it says Officer Hagen didn't announce his presence or give any warning at that time that he was going to release the canine. Are there other references to warnings in the complaint that I'm guessing? Not that I'm aware of, Your Honor. Okay. Then my question would be why are we looking at the video and the other, the six warnings on the video because they don't appear to me to contradict anything that is in this complaint? Well, I share that concern, Your Honor. Okay. I think that... We're here on a 12-week six-year-old, Your Honor. Yes, Your Honor. And so on a 12-week six, the allegations in the complaint are presumed to be correct. It's read in the light most favorable to the plaintiff in this case. So I don't know why. I don't think all those warnings should have been necessarily considered. But warnings became a focus of this case, I think. Have you made that argument? I mean, I understand maybe it's part and parcel. But, like, it seems like the way you briefed it is to consider those warnings and the argument you've made is the sort of narrow one, which is they needed to give an additional warning, right? Not that we should assume. I mean, your briefing doesn't say there were no warnings given. And if we interpret it the way that you've suggested now, that's diametrically opposed to what your briefing has suggested, right? Correct. The warnings that are on the video were news to me once I saw the video. They're news to my clients. It's different from the information I had from my clients that he didn't hear any warnings. So I think that the court below focused on the warnings probably because the cases from Virginia deal with warnings. Warnings are a big issue dealing with police dogs. There are cases dealing with that. But I'm not able to put my finger on it right now. I think it is either the cough case or the Vatican case in which the court noted that there was a dispute about whether the warnings were, in fact, heard. And that was a reason to deny a motion for summary judgment because, obviously, a warning can be given. If the officer is a mile away, it may not be heard by the suspect fleeing. And, of course, the purpose of a warning is to give the suspect time to give himself up. And, of course, the case law also establishes that there may be multiple warnings needed. When you look at the Vatican case, they were investigating a burglary into a home. And I think that was the case where there was a dispute about the warnings. I think the officer said that they gave the warnings. Eyewitnesses said that they didn't hear any warnings. And the suspect said he didn't hear any warnings. And in that case, the dog was released into the building unbeknownst to anyone. I think there was someone sleeping behind the door. The dog broke into the door and killed the person. In this case, the fact that the issue of whether or not there was a warning, whether or not the issues were sufficient, is not as critical to a case where the dog is fully released. If an officer has a dog on a leash and says, stop, put your hands up, or I'm going to release the dog, and the person doesn't comply and the officer releases the dog, the dog runs to the suspect, that's a different situation. That officer has warned, and after that point, the dog is going to do what the dog is going to do and what it's trained to do, which is bite. In this case, this officer kept the dog on the leash the whole time. And upon finding Mr. Harrell, followed up in the floor of this storage room, didn't say anything to Mr. Harrell, didn't say, sir, we found you now, stand up, put your hands up, you're under arrest, nothing of that nature. The officer said, pack him, and the dog attacked Mr. Harrell from behind, causing extensive damage that I won't go into here, but very severe injuries to a man who posed no threat to anyone at that moment, was not attempting to escape, was unarmed, and there was no indication that he was armed. And the case law is clear that when you're analyzing whether excessive force was used, you look at the moment of the arrest. At the moment of the arrest, Mr. Harrell was not a threat to anyone and he wasn't a risk of getting away. He was in a room surrounded by officers and a building surrounded by officers with a dog, all with guns. And he was unarmed. Now, after he was arrested, they found a utility knife in his pocket, but that wasn't known to any of the officers until after he was arrested. When, I'm sorry, it's clearly established at all relevant times that an officer's right to use any force in effecting an arrest is severely limited unless the individual being arrested poses an objective threat. Now, looking at the allegations of the complaint, in the light most favorable to Mr. Harrell, and even looking at the video, there's no way that a reasonable officer or anybody would think that Mr. Harrell was a threat at that time. He's a 130-some pound man with one leg on the ground in a fetal position. Why on earth wouldn't this officer try some less violent means of arresting him or even give him one more chance to give himself up before releasing the dog? Instead, this officer silently snuck in, let the dog go around behind and said, Peck him, which is attack or seize him in German. In Myers v. Baltimore County, Maryland, a Fourth Circuit case from 2013, this court noted, quote, that courts have repeatedly held that it is not required that a right violated have been recognized by court in a specific context before such right may be held clearly established for the purpose of qualified immunity, and noted that it is stated in, quote, forthright terms that officers using unnecessary, gratuitous, and disproportionate force to seize a secured armed citizen do not act in an objectively reasonable manner and thus are not entitled to qualified immunity. The officer in this case, the level of force that he used was unnecessary, gratuitous, and disproportionate. So, I mean, in a qualified immunity case, if we were to say qualified immunity doesn't apply here, we'd need to cite some cases saying this was clearly established. What cases do you think we should cite? What are the best cases for you that show it was clearly established that it would be unconstitutional to use this level of force under these circumstances? Yes, Your Honor. And I will note, and I think that your law clerks, you would agree, that there are not a lot of cases in the Fourth Circuit and in the Supreme Court about police dog cases. But when you look at the case of Koft, that is a Fourth Circuit decision from 1990. The police were investigating a robbery. The suspects fled, and some of them were hiding behind a shed or something like that. They released the dog. The dog did severe damage. Now, that case also involved the police officer using a baton at the end. So no case is exactly similar. But in that case, summary judgment was— Right. It's not—I mean, Koft, they literally beat the guy with the baton. At the end, yes. Right, but the court didn't distinguish those and say it's the overall use of force that was excessive. The court doesn't say that the dogs, had they stopped after the dogs, that, too, would have been excessive. I agree with you that the court—I agree. And it sort of seems inconsistent with later cases to suggest that, you know, in the context that we've got of somebody fleeing, that that would be inappropriate. I mean, that just seems like an odd—I mean, I understand why you might want to use it, but that seems like an odd one. Well, that's one of the ones from the Fourth Circuit. Again, there's not a lot of them. So what— What do you want us to do? Well, when a court is considering what's clearly established— What do you want us to do? I want the court to reverse the decision below or— And what? Reverse finding that qualified immunity does not apply. Or alternatively, I think the court could remand it with instructions to place the burden. You haven't got any discovery. That's correct. So all you can do is get discovery. This is a 12B6 dismissal. Yes, I'm asking the court— The most you could seek is to go back and get discovery. Well, I do think that this issue would be better reserved for summary judgment or at trial. However, it was resolved at virtually the earliest part of the case. So I do think that the case could be reversed and found that qualified immunity doesn't apply. Or I think that's principally what I'm asking for, Your Honor. Now, when you ask about—when you're talking about the baton and that being a different instrument— Do you know what that red light means? Oh, I'm sorry. I do know what it means. Go ahead and finish your sentence. Okay. Well, in Myers, the Fourth Circuit case, it said the fact that the force used in the present case emanated from a taser rather than from a more traditional device is not dispositive. So it doesn't matter really what type of weapon or instrument of force was used. Ms. Safar? Good morning, Your Honors. May it please the Court. On the night of December 26, 2021, the day after Christmas, Officer Hagan responded to a burglary alarm at the Virginia Cars dealership on Midlothian Turnpike in Chesterfield County, Virginia. This alarm was triggered when Mr. Harreld shattered the glass door of the business and forced his way inside. After seeing Chesterfield County police officers respond to the dealership, Mr. Harreld did not surrender. Rather, he searched for a hiding place in the building, ultimately moving deeper into the building, ascending the second floor and hiding in an aisle of a dark storage room. As Chesterfield police entered the building, the first uniformed officer in the door gave a canine warning, loudly announcing, Chesterfield police canine. Can I just stop you there? How is that a warning? I mean, the closest we've come that I can find to defining what we're talking about when we say warning is in cop, where we say it's supposed to be a forewarning that the dog is going to bite that provides a fair chance to surrender. If all you say is it's a police dog, I mean, why isn't that understood as there's a dog that's going to be looking for you, so you might as well come out? But I didn't hear anything about a bite. Yes, Your Honor. The warning cases that have been decided by the Fourth Circuit, and there are none by the United States Supreme Court on canines, have not stated specifically what that warning should look like. Well, like I said, cop says it should be a warning that the dog is going to bite. Yes, Your Honor. That initial warning is an announcement that there's a canine in the building. The second warning that was given moments after by Officer Hagan is police canine, come on out. Are you going outside to complain? I'm sorry, Your Honor. I'm relying on the body-worn camera video that establishes the blatant contradiction. So you're going outside to complain? Yes, Your Honor. How do you get outside to complain in a 12B6 room? Yes, Your Honor. Under this Court's ruling in Doherty, as well as the United States Supreme Court precedent in Scott v. Harris, we are allowed to look at video, in fact the video controls, where there's a blatant contradiction between the video and the facts alleged in the complaint. Judge Harris, you were asking my opposing counsel about that, and there are actually a few references in the complaint to warnings. One of those is on Joint Appendix 10 at paragraph 42, where it is alleged that Officer Hagan gave Mr. Harold no order at all. No, that's order, not warning. What he's saying there is he didn't give any warning at that time that he was going to release the canine if Mr. Harold didn't comply with whatever order the defendant may have wanted to give, but in fact he gave him no order at all. Your Honor, there was an order given. It says no order was given at all, but the order was given to come out now in several of the precedents. I just don't understand how a reference to no order given at all shows that he said there were no warnings given at all. Well, if we look at 44 on the same page, J.A. 10, yet Officer Hagan did not request or order Mr. Harold to do anything, nor did he give any warning that he was about to deploy the canine. And then again on J.A. 13 at paragraph 64 and 65, specifically 65 says Officer Hagan failed to follow these policies and procedures and under the circumstances failed to give an appropriate warning before deploying the canine to attack Mr. Harold. So this is right, and this is what the district court relied on, and I had so much trouble with this because the district court says the footage blatantly contradicts Mr. Harold's complaint to the extent he alleges that Officer Hagan failed to give any warning and then cites these paragraphs. But that's sort of like a conditional. If he is alleging this, then it's blatantly contradicted, but I don't really read those paragraphs as alleging that no warning was ever given, and I don't even see the district court finding that that's what they say. I just find this very mysterious. Judge Locke was very reluctant, I believe, to use the BWC, and she still found because she read those paragraphs, and she specifically footnoted in her opinion 64 and 65. You're reading it as though the district court said it blatantly contradicts the complaint because he alleges that he failed to give any warning, but that's not even what the district court says. I am genuinely perplexed as to why the district court was going on here. Just so I understand your argument. Sorry, I'm catching up slowly. Your argument seems to turn a large on paragraph 44 where it says Hagan did not request or order Mr. Harold to do anything, nor did he, that being Hagan, give any warning that he was about to deploy the K-9. Yes, Your Honor. Your point is when somebody walks in and says police K-9, that in your view that is a warning that the K-9 is being deployed. I think more specifically, Your Honor, that the second warning that was given was police K-9, come on out now or I'll release the dog and the dog bites. You will be bit. You understand me? Counsel, can I just stop you because the district court transcribed that differently as police K-9, come on out now and I'll release the dog and the dog bites. And so the clerk and I have spent a lot of time listening to the video. It's very unclear at best which one it is. So do you think the district court just got this wrong or did the officer get it wrong in the heat of the moment? What happened here? Your Honor, I had noted it as or I'll release the dog and the dog bites. Right, but on JA-43 when the district court says what the warning is, I know that's what you had in your brief, but it contradicts the district court's transcription, which is police K-9, come on out now and I'll release the dog and the dog bites. You will be bit. So I just want to know what you think I'm supposed to do with that. Your Honor, I had it as or I'll release the dog and the dog bites. I know. Is it transcription error? I'm not certain. I listened to the audio myself. You thought the audio was clear on that because I didn't. I think it's clear that they're saying come on out now or you will be bit, and that's the subsequent warnings as well. The third warning is police K-9, come on out now. The come on out now I could hear clearly. I couldn't. The and versus or, it doesn't matter. Does it make a difference to your argument whether it's and or or? I know sometimes we like to talk about the disjunctive and conjunctive here, but does that make a difference for your argument? Your Honor, it does not make a difference. Under Harris and Doherty, this court is entitled to consider and ought to consider those blatant contradictions. In Putnam versus Harris decided in 2023 by this very court, it recognized that the body-worn camera should be considered and that there had been no opposition by opposing counsel to using it. So to judge Richardson, to your point with my opposing counsel, there was no dispute in the briefing that the body-worn camera should be considered on those points with regards to the warnings having been given. So considering those six warnings, this is a violent felony under Virginia code and federal law, nighttime breaking and entering into the car dealership. We have officers that respond. The K-9 entrance is given with the announcement downstairs. There are six total announcements or warnings or commands given. Three of those take place on the second floor, which is where Mr. Harreld is hiding. It is obvious, it is conceded in the complaint, that Mr. Harreld sees police, and after he sees police, he flees to the second floor to hide. I believe opposing counsel said in his briefing that his client was not able to find an appropriate hiding place on the first floor, so he actively fled to the second floor. So now we have a suspect that has actively fled from law enforcement and has concealed himself in a dark storage room on the second floor of the building in an aisle that is cluttered, and there are three announcements and warnings given on that second floor, one of which is in the very room in which the suspect was located. When Officer Hagen locates the suspect, Mr. Harreld, he is crouched down in the aisle behind computer equipment and cardboard boxes. Judge Locke, when she reached her opinion in the district court, she found that the first gram factor, whether or not the severity of the crime favored Officer Hagen. She said it was a close call and went in favor of the suspect, Harreld, as to the immediacy of the threat. Judge Locke erred in reaching that conclusion in part because she didn't take You're saying Judge Locke erred when she said it's plausible that Officer Hagen's use of force was objectively unreasonable for failing to issue a final warning before deploying CODA. Yes, Your Honor. Did you cross appeal? I did not, Your Honor. It is not required, nor is it actually permitted, because there was not an order entered that was a ruling contrary to my client. This court has recognized in numerous cases, as has the U.S. Supreme Court, that when you are talking about a cross appeal, there is not a need to cross appeal. So in Judge Locke's opinion, you lost on the constitutional claim. Yes, Your Honor. But we, of course, request this court to affirm qualified immunity, but we encourage the court to reach the first prong, and if necessary, appropriate the second prong. For purposes of review. So you want us to vacate and remand? No, Your Honor. There's been no discovery. Your Honor. There's been no discovery here. This is a 12B6 ruling. 12B6. Yes, Your Honor. This is qualified. The complaint fails to state a claim on which relief can be granted. And she says it's plausible that his use of force was objectively unreasonable. Your Honor, that's because when she – And ruled against you, and you didn't cross appeal. Your Honor, the Fourth Circuit has stated in Reynolds v. American National Red Cross that we're seeking affirmance of the district court's judgment on an alternate ground or a different reasoning. Cross appeal is not necessary. So this court's precedent, both in that case as well as its qualified immunity case law, including Maney and Melgar in the other cases, because qualified immunity requires the court to consider one of two or both prongs, there is not a need to note a cross appeal in order to make this argument. It is automatically before the court when qualified immunity is appealed, but the court under Saucier v. Katz and Pearson v. Callahan considers both prongs. So what is it you want us to do? You want to win on the other prong. Your Honor, I'd like to win on both prongs, please. I'd like for my client to win on both prongs. Well, but you've already, the ruling was your way. You prevailed on the second prong, and you didn't bother to appeal this first prong. Well, Your Honor, that's because there isn't an order to appeal from because we won in the lower court. We would, of course, like for the court to affirm on the clearly established prong because if the lower court cases that it looked at, there are only seven cases out of the Fourth Circuit that deal with canine seizures or canine bites, and only four of those are published. What bothers me is you want us to do all that on a 12B6 ruling. There's been no discovery at all. We don't have a record. The expectation of the U.S. Supreme Court is that qualified immunity will be considered and given at the earliest stage appropriate. I've been around the horn a couple times. I've heard of qualified immunity. Yes, Your Honor. The reason that we've asked for the court to consider both prongs is because there are only four published cases out of the Fourth Circuit that deal with canine seizures. Do you want an advisory opinion that would go your way? No, Your Honor. I think that the police officers. Without any discovery. I think police officers in Virginia and in the Fourth Circuit are entitled to know whether or not it's objectively reasonable to release a canine to seize a suspect. Whose hands are hidden. Judge Locke said it's objectively unreasonable right here. In Judge Locke. In this case, objectively unreasonable. And Judge Locke relied on the allegation. And you're saying Judge Locke is wrong, but you don't appeal her ruling. Because, Your Honor, I'm appealing. I'm challenging the reasoning behind her ruling, which is not the same under the Fourth Circuit law. Judge Locke, in reaching that conclusion, relied on the allegation in the complaint that the suspect was laying motionless on the floor when he was found. If you look at three minutes and 37 seconds into the body-worn camera video, it shows that he's not laying motionless on the floor. And it shows that his hands are concealed. But there's no possible. I mean, there are lots of things you ought to be saying. I get that. But, like, there's no possible reason that you're suggesting that we're going to reconsider Judge Locke's factual findings on an interlocutory appeal under qualified immunity based on our view of the video. We have to take the district court's findings as they come. Because it's an interlocutory appeal. We only have jurisdiction over legal questions, not factual questions. Well, Your Honor, it's a final order in this particular case. It's not an interlocutory appeal because we prevailed below. And it's not summary judgment, so her decisions, in fact, aren't the same. But, you know, I can see that there is some hesitation about reaching the first prong. I think the first prong is compelling, though, because part of what you see that shows the immediacy of the threat. Why don't you talk about the second prong a little bit? Yes, Your Honor. On the second prong, the law has to be clearly established. And we know from all of the recent rulings of the U.S. Supreme Court, including Casella v. Hughes and Escondido. For clearly established, you can't use excessive force. For clearly established. I agree with that part. You want to be more specific in your position. Yes, Your Honor. But it's clearly established you can't use excessive force. It is clearly established that you can't use excessive force. But the case law has to establish a bright line. Officers are not held liable for reasonable or for mistakes. They have to have been plainly incompetent in their actions. And there has to be case law that squarely governs the facts of the case. Here, the case law that we have that is published in precedent are Coff, Vatican, and the Melger case. Why can we only look at dog cases? I mean, we have said, and I think your colleague quoted one of the most recent times when they've said this, like it doesn't, like you can use taser cases and baton cases, the means by which the force is applied, we can kind of borrow from other cases. Even in Putman v. Harris, which was taser and canine, in the Myers case cited by my opposing counsel, which was a taser case, the courts have said that it is appropriate to use force to seize an individual when there is a high threat of violence related to the crime or the conditions and the suspect is evading or attempting to flee. But we also say all the time, it's like the moment at which force is employed is what matters. And what's alleged here is that at the moment force is employed, he's not fleeing, he's not attempting to evade, and he's not a risk. Well, Your Honor, first of all, Barnes v. Felix, issued by the United States Supreme Court this year, clarified that the actual viewpoint needs to be the totality of the circumstances without putting chronological blinders on the court. So for that purpose, we start all the way back with the entrance into the building. It educates the officer's decisions. An officer is not going to, in this particular case, the officers gave warnings, they gave commands, they announced their presence. Under Coff and Vatican, that is what this court said was expected before you release a dog, and this officer did exactly that. Is your argument that that is sufficient to make the use of a dog reasonable if a warning is given? That's all we ask. Under the facts of this case, Your Honor, absolutely. Okay, so only on the facts of this case, but which of those facts, like what facts? We don't have a record here. We don't know what the officer saw when he walked into that room. We don't know what the officer perceived. I understand it's an objective inquiry, but we care what the officer thought. We don't have any of that here. What the officer thought isn't relevant. It is objective reasonableness. We have said several times, let me just stop you, that although it is an objective question, we care what the officer thought because that sheds light on what a reasonable officer would have thought. It's not one and the same, but it's certainly relevant, which is why we generally don't decide these cases until we can get the officer's account of what happened. The officer's body-worn camera video shows that he encountered a suspect that had broken in to a commercial establishment at nighttime, had fled to hide. Under Fourth Circuit case law, hiding from an officer is an attempt to evade arrest. You want to put your case in through the video and not have anything else in the case, not have any depositions, not have any record made. This is 12b-6. Yes, Your Honor, but... It should be decided on the complaint. Your Honor, this court has said that... I know what the court has said a few things, but I'm telling you what I'm saying. We should be deciding these things on the complaint, and if we're going to get outside the complaint, we ought to have discovery. Officers... And let's depose these officers. Officers are entitled... Let's find out what's going on. And you come in here after the judge has ruled against you and said that Officer Hagan's use of force was objectively unreasonable for failing to issue a final warning, and you did cross appeal, but you want us to vacate that ruling. Your Honor, I'm asking you to... I'm asking the court... Without a cross appeal. I'm asking the court to affirm the ruling on either prong. And you want us to vacate the first one. You told me that earlier. You want us to vacate the first prong and win on the second prong. You said you wanted both prongs ruled on. Your Honor, this court is supposed to look at both prongs when it's appealed. That is the way that it works. If you look at the court's... Well, we can look at either one under the Supreme Court precedent. You can take either one first, Your Honor. We know how to do this kind of thing. We get a lot of these appeals. You can take either one first. But you want us to take up your claim about the first prong without a cross appeal. Your Honor... And you know how to file a cross appeal. Your Honor, I would like for the court to affirm on the second prong that the law was not clearly established such that it prohibited Officer Hagan from using a canine... The law is clearly established you can't use excessive force. The question is whether seeking a dog on a guy with one leg curled up in a ball and doing excessive damage to him for up to a minute biting his vitals. I've read some of this record. Your Honor, that is...  That is the complaint. That is not the beat up you see. Well, we take that as true. That's in the complaint. Then Doherty's given no meaning. This is 12b-6. But Doherty said that the court is to consider blatant contradictions. So we as practitioners and as officers are following the laws that have been written. That's the point of qualified immunity. The officers are acting within the scope of what they have been told is permissible. And there's no clearly established law. And why is it that you think this video blatantly contradicts putting to one side the earlier announcements slash warnings? What else is blatantly contradicted? The suspect was not laying motionless on the floor. He was hiding behind a box of computer equipment with his hands concealed. I could not figure out whether the hands concealed thing I'm not really getting from the video. May I answer the question, please, Your Honor? At 3 minutes and 37 seconds on the body-worn camera footage, when Officer Hagen gives the directive to the dog to seize the suspect, the suspect is bent over behind boxes of computer equipment and the lower part of the suspect's arms and the suspect's hands are not visible. Well, it's not visible to the camera, but we have perhaps. I find the whole thing kind of hard to follow. But unless the officer is exactly where the camera is, we don't know what the officer could see. Your Honor. And that's what is so weird about this case. There's not even the officer's account of what he could see. Your Honor, it's clear from the camera, given the distance that the suspect is hiding behind boxes of equipment and how low the equipment is, that his hands are concealed. And a suspect, in closing, an officer who encounters a suspect that is concealing their hands and hiding themselves is an appropriate time to use force. And if it's not, it is not plainly incompetent for an officer to utilize a canine in those circumstances based on the law that is established within the Fourth Circuit and the U.S. Supreme Court. And for those reasons, I would ask that you affirm Judge Locke's ruling awarding qualified immunity to Officer Hagan in this case. Thank you very much. Mr. Allen. Your Honor, it's on the issue of what the officer thought. I do think that it's important to know, and as alleged in the complaint, one of the sergeants for the police department testified at Mr. Harrell's preliminary hearing that they didn't see him with a gun and they didn't have any reason to think he had a gun. And so I would have liked to have had that considered by the court below in determining whether force was appropriate because it is. You look at the moment, of course, of the arrest, and there's a lot of focus on what happened beforehand. But, I mean, the district court didn't rely on there having been a gun scene. I mean, like there's no, there was not a suggestion that he was carrying a gun. Never, or any weapon. It just seems like that's an odd point to try to make, right, is that there might be lots of things that you want to do, but there's uncertainty, right? But nobody says that they saw him with a gun. Nobody saw a gun. So, like, why is that the point? I guess I'm just a little confused. Well, it is relevant to a certain degree because if a person has a gun, if there's an armed robbery and police are investigating an armed robbery, clearly they can assume that the person may be armed and dangerous. But if there's no, an officer just can't assume that everyone is dangerous, I mean, for heaven's sakes, in this country everyone can carry a gun if they want to. So that doesn't necessarily, there's no, bottom line is in this case there's no evidence that Mr. Harrell was armed or that any of the officers thought he was armed. There's no evidence in this case. He could have assumed that he had a gun. We don't know. Well, an officer can't just make assumptions like that. It has to be based on the facts. Well, the complaint alleges that, I'm going to forget the exact language, but something like the officer knew or should have known he wasn't armed. And we're supposed to, you know, draw inferences from the complaint in favor of the plaintiff. So I'm wondering if we can infer that he's alleging that the officer. It's alleged several times that he was unarmed. Right, but not only that he was unarmed, but that the officer knew he was unarmed or should have known he was unarmed. And I'm wondering if we can infer from that that he is alleging that you could tell I wasn't holding a weapon. It was Sergeant Murphy who testified at a preliminary hearing that he wasn't armed and they didn't think he was armed. Okay. I wanted to talk briefly about the warning. Is the preliminary hearing record in this record too? It's not in the record. I have a copy of it. You're just like the other side. I thought it was a 12B6 case I came in here. And they were talking about everything but what's in the complaint. Yes, Your Honor, that's true. I do have a copy of it. I have my client's own testimony and all of that. I would like to present in opposition to a summary judgment. It's not a summary judgment. I know. It's a 12B6 dismissal. Right. They threw out your complaint on the face of the complaint. Even earlier. It's outrageous. We're trying to get to discovery so you can argue about summary judgment. Yes, thank you. They've got to get discovery. I'm with you, Your Honor. And you'll get depositions. Officers, a deposition to your client. That's right. And then the court can consider summary judgment if it gets to that point. Correct. But here, we're here on a Rule 12B6 dismissal. Correct. And I do think that all of those things should be explored before a case is dismissed. And I will say that in this case, this officer is now charged with drug distribution and is no longer an officer. So there will be a lot of things.  That's not in the record. But it will. I'd like to put it in the record.  It doesn't have anything to do with it. Right. Where was the officer for Thanksgiving? I'm just sort of curious. I mean, we're, like, so far afield from anything that's even arguably pertinent. Right. Well, I want to speak to the warning and what exactly was said. Standing here today, I don't know. I'm going to obviously listen again. But there is, in my mind, a very big difference between police canine, come on out, and I'll release the dog. Who would come out? If the officer said, come out, or I'll release the dog and the dog will bite, that's a warning where the person would have an opportunity to give themselves up. If the officer says, come on out, I've got a dog, and I'll release the dog and the dog will bite. We don't typically interpret these things like statutes. Right. Like, a reasonable person hearing that would not understand that I will only release the dog if you come out. Well, I think that it's a very big difference. I think my colleague said that she didn't see a difference between the and or or in that. I certainly do. So, again, you look at the moment that the arrest was made, and I would draw the court's attention to the Crime v. Price case. That's it. That's a case where officers were investigating a traffic situation in office. The vehicle was coming towards the officer. I'm sorry. I'll see that I've done it again. Finish your sentence. And the court found that the officer was justified in shooting at the vehicle while it was approaching them, but not justified once the in doing another shot once the vehicle was passed. Thank you very much, Mr. Allen. Thank you. We appreciate counsel's arguments. We'll adjourn court till tomorrow morning. We'll come down and recounsel. Thank you very much for helping us out. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Robert B. King, Pamela A. Harris, Julius N. Richardson